PORTER v. BRIDGERS.

(Filed March 10, 1903.)

CONTRACTS—*Sales.*

> A deed conveyed standing timber to a trustee, who was to permit defendant, on payment of a certain sum, to cut the timber, and afterwards, on measurement of the wood, and payment by defendant of a certain price per cord, to convey the wood to him. The trustee agreed to allow defendant to remove the wood as fast as cut without prepayment—it to be paid for as soon as measured by the person to whom defendant sold. The title to the wood did not pass to defendant until it was removed by him, so that he was not liable for wood burned while awaiting shipment.

ACTION by S. E. Porter and others against H. C. Bridgers and others heard by Judge *Francis D. Winston* and a jury, at October Term, 1902, of the Superior Court of EDGECOMBE county. From a judgment for the plaintiffs, the defendants appealed.

*Gilliam & Gilliam,* for the plaintiffs.
*John L. Bridgers,* for the defendants.

MONTGOMERY, J.   The plaintiffs, other than T. H. Gatlin,. on the 29th of June, 1899, conveyed by deed to T. H. Gatlin all the timber of whatever kind and description, which was. standing and growing upon their Porter tract of land in Edgecombe County, in trust that he should, upon the pay- ment to the plaintiffs by Johnson, agent, of $200 in cash and $367.50 on the first day of January, 1900, permit John- son to commence to cut the timber for market.   The estimate of the wood to be cut by Johnson was 5,000 cords and the price to be paid by Johnson was $22\frac{1}{2}$ cents a cord, Johnson to cut it at his own expense.   When all the timber should be cut and was ready for shipment, the balance, after deducting the first mentioned payments, was to be paid by Johnson. When the whole of the purchase money should have been paid and when all the wood had been cut and measured and ready for shipment Gatlin the trustee was to convey the same to Johnson.   Johnson conveyed his interest in this contract to the defendant.

.The two first mentioned payments were made, and the plaintiff cut and piled along the railroad for shipment four thousand cords, 1,305 cords of which were destroyed by fire.

There was evidence offered on the trial by the plaintiffs tending to show that there was an agreement between Gatlin the trustee and the defendant that on account of the danger of fire, the defendant might ship the wood as fast as possible, and render statements and settle for the same as shipped; that Fairley's measurement of cord wood, shipped to him by Bridgers, would be accepted; that cord wood was shipped from time to time by the defendant under their agreement, and without further notice to the plaintiffs than the state- ments subsequently rendered by Fairley; that the plaintiffs were never called upon by the defendant to measure the wood, except as above stated, and that the defendant was not waiting for any measurement of the wood on his part when it was

burned. There was evidence on the part of the defendant that he had given the plaintiffs notice to measure this wood, and it was agreed, as stated in the plaintiff's evidence that the measurement of Fairley would be accepted.

This action was brought by the plaintiffs to recover of the defendant the value of the 1305 cords of wood which were cut and penned and unmeasured along the railroad, and afterwards destroyed by fire. The defendant insists that under the contract, the deed of trust, the wood that was burned was the property of the plaintiffs; that no title passed to him because there had been no measurement of the wood, and the purchase price had not been paid. The defendant requested the court to charge the jury: "Wood when cut from the land becomes personal property, and if anything remains to be done by the defendant to perfect and close the trade, the title does not pass to the defendant until this has been done; also the possession of the thing sold must pass from the seller to the buyer, to illustrate—under the contract the defendant could cut the wood but he could not take it into his possession and remove it from the land until it was ready for shipment and all paid for; so, when the defendant had cut the wood and got it ready for shipment, and "ready for shipment" means when it has been measured and hauled to the railroad for transportation, and paid the money for it, it became his property, the title and possession then passing to him." So the court instructs you "that if you find from the evidence the facts to be that the wood which was burned was not ready for shipment and had not been paid for and removed, it was in law the property of the plaintiffs and the defendant is not liable for the value or price of such wood, it being destroyed by fire."

We think the refusal of his Honor to grant the request was error. It is clear that upon the face of the deed of trust, the trustee was not permitted to convey the title to the wood,

until the whole of the purchase price should have been paid upon a proper measurement of the wood. He had no power in law to alter that requirement of the trust deed. He had no right against the term of the contract to permit the removal of the wood, or any part of it by the defendant, until it was measured and paid for. It is to be seen, upon careful reading of the agreement made by the trustee with the defendant to permit the defendant to remove the wood without measurement and prepayment, that the agreement was really not inconsistent with the powers given to the trustee in the deed. To avoid the danger of fire, the trustee permitted him to ship in parcels or parts before the whole was measured and paid for, but with the understanding that each shipment was to be measured by Fairley and paid for at once upon that measurement. The 1305 cords which were burned did not fall under the agreement with the defendant, but remained the property of the plaintiffs under the terms of the deed of trust.

The exception to the refusal of his Honor to give the instruction we have quoted above, is the only exception in the record, and it appears in the statement of the case that "the court stated the contentions of the parties and instructed the jury as to the law submitted, but declined to give the above prayer of defendant."

For the error pointed out there must be a

New trial.