L. D. McKINNEY v. TROY B. MATTHEWS.

(Filed 7 October, 1914.)

1. Contracts, Written — Timber — Words and Phrases—Lumber—
   Log Measurement—Expert Evidence—Instructions.

   Lumber is the manufactured product of logs, and where the defendant has entered into a contract with the plaintiff to purchase the timber on his lands, and pay therefor at a certain price per thousand feet of lumber, it is error for the trial judge to charge the jury that the measure of plaintiff's recovery was at the stated price "log measure, including the sawdust that was cut out by the saws and the slabs"; and the instruction is further held erroneous in ignoring testimony in this case of the custom and the standard ordinarily prevailing for ascertaining the measurement of the timber sold. *Hardison v. Lumber Co.,* 136 N. C., 174, cited and applied.

2. **Contracts, Written—Executory Contracts—Subsequent Modification—Parol Evidence—Trials—Instructions.**

> While a written executory contract is still in the course of performance, it may be modified by parol evidence as to subsequent obligations mutually imposed by the parties, and such is not objectionable as varying the writing; and the waiver of any legal rights under the written contract is sufficient consideration to support the promises resting in parol. Hence, where under the written contract sued on the defendant bought the timber on plaintiff's land to be paid for at a certain price per thousand feet of lumber, and the evidence is conflicting upon the question of the quantity of lumber the defendant had received, it is competent for defendant to show that it was agreed by parol, subsequent to the execution of the writing, and relating to transactions since occurring, that the "tallies" or account kept by the defendant's vendee should control.

3. **Contracts, Written — Parol Evidence — Explanation—Trials—Instructions.**

> Where the number of feet of lumber sold by the plaintiff to defendant is controverted in an action to recover the purchase price, and the defendant had not kept an account thereof, it is error for the trial judge to charge the jury that this was a circumstance they could consider in plaintiff's favor, and exclude from their consideration the defendant's testimony, in explanation, that subsequent to the written contract sued on the parties had mutually agreed by parol to take the tallies of the defendant's vendee, which were introduced in evidence.

APPEAL from *Peebles, J.,* at February Term, 1914, of HARNETT.

This is an action to recover money alleged to be due on a contract for cutting certain timber by the defendant on the plaintiff's land, and the controversy is as to the quantity of timber cut.

The case on appeal states that the plaintiff alleged in his complaint that the "plaintiff entered into a contract with the defendant to sell to the defendant the timber upon certain of the plaintiff's land, at the price of $2 per thousand feet of lumber." And this was admitted by defendant's answer. The plaintiff offered evidence that tended to show that from a measurement of the stumps, laps and trees after the cutting, and count-

166—37

ing the number of logs taken that the defendant cut and removed from plaintiff's land 464,088 feet of lumber, and that the defendant had not paid him for but 328,731 feet, and that the said measurement was based upon a generally recognized rule of measuring lumber by what is known as "log measure."

The defendant offered evidence that tended to show that after the making of the original contract (which was in writing) between the plaintiff and the defendant, that it was agreed between them that they should settle for the timber in accordance with the lumber tallies of the concern to whom he shipped the lumber, and the defendant testified that the twenty tallies which were introduced by him, which aggregated 328,731 feet, were the bills or tallies which he and plaintiff had agreed to settle by, and defendant testified that actual measure of the lumber would be more than "log measure," and the plaintiff denied this agreement, and upon this point his Honor charged the jury as follows:

"This contract set up in the complaint and admitted in the answer sold the trees at $2 a thousand. After that contract was made, the defendant says that the plaintiff agreed to take the invoices, the counter-sales of the lumbermen to whom he sold the lumber. That was made after the other contract was made, and there is no consideration moving for it, and the plaintiff is entitled to recover $2 a thousand, log measure, including the sawdust that was cut out by the saws and the slabs—the outside that you cut off in order to make a sill." To which charge the defendant excepted.

His Honor charged the jury in part as follows:

"Now, it was the duty of the defendant when he bought that timber by the thousand to have had the timber measured when every stick of that timber was brought to his mill; it was his duty to have it measured and make a memoranda of it, because Mr. McKinney, the plaintiff, had intrusted him with keeping an account of it. He admitted that he did not do that; but he says he shipped the timber to a firm in Raleigh, that the returns of that firm showed that he shipped them 328,731 feet. Some of it, he said, was planed; he admits that he kept no account of

the logs; did not measure any of them, and he put on two or three men that said they went there and estimated it, and they estimated it, by just walking through and not counting the trees nor measuring any of them, at 250,000 feet. The plaintiff puts on two men who went there with him and measured the stumps and then to the lap where it was cut off and took as near as they could an average of the trees, and then averaged it, and there were 1,464 trees, and that the trees averaged 317 feet to the tree.

"It is for you to say which is the more accurate way of measuring timber, which is the most reliable, to go there and measure the stumps or to go and walk through the woods and not count the trees or measure them." To the foregoing charge the defendant excepts.

"When you go to consider the testimony of the defendant, you have a right to consider for what it is worth the fact that he did not keep an accurate account of this lumber." To the foregoing charge the defendant excepts.

There was a judgment in favor of the plaintiff, and the defendant excepted and appealed.

*E. F. Young for plaintiff.*
*Charles Ross for defendant.*

ALLEN, J. The contract of the plaintiff is to sell the timber on certain land, to be paid for at the rate of $2 per thousand feet of *lumber,* and the evidence of the plaintiff is directed to proof of the quantity of *lumber* cut.

There is a well marked distinction between the terms "timber" and "lumber." "The word 'timber' has an enlarged or restricted sense, according to the connection in which it is employed. It may refer to standing trees or to stems or trunks of trees cut and shaped for use in the erection of buildings or other structures, and not manufactured into lumber within the ordinary meaning of the word 'lumber.' It does not ordinarily refer to the articles manufactured therefrom, such as shingles, laths, fence rails, or railroad ties. Lumber is timber sawed or split

for use in building, that is, the manufactured product of logs." 25 Cyc., 1545. "Slabs are not included within a statute giving a lien on the 'lumber and timber' for services in cutting logs." *Engi v. Hardell,* 123 Wis., 407.

It follows, therefore, as the purchase price is determined under the contract by the measurement of the lumber cut, the manufactured article, it was error to charge the jury that the plaintiff was entitled to recover for the whole log, including the sawdust cut out by the saws and the slabs.

If, however, the parties had not agreed that the purchase price should be determined by the measurement of lumber, the instruction would still be erroneous, as it was competent to prove the custom and the standard ordinarily prevailing under such contracts, and that this was not in accordance with the contention of the plaintiff. 25 Cyc., 1560; *Hardison v. Lumber Co.,* 136 N. C., 174.

It was also erroneous to instruct the jury that there was no consideration for the agreement between the defendant and the plaintiff, made subsequent to the original contract, to take the invoices of the sales of the lumber as the means of determining the quantity of lumber cut.

The evidence of this agreement is not objectionable as varying a written contract by parol, as the agreement testified to was subsequent to the original contract. *Harris v. Murphy,* 119 N. C., 34; *Freeman v. Bell,* 150 N. C., 148.

In the last case cited the Court says: "It is well settled that the rule that parol evidence will not be admitted to contradict or modify a written contract does not apply where the modification takes place after the execution of the contract," citing *Adams v. Battle,* 125 N. C., 153; *Harris v. Murphey,* 119 N. C., 34. Nor is the agreement without consideration to support it. *Adams v. Battle,* 125 N. C., 158; *Lipschultz v. Weatherly,* 140 N. C., 368; *Institute v. Mebane,* 165 N. C., 650.

In the last of these cases it was held that a valuable consideration may consist either in some right, interest, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other, and

that a waiver of any legal right at the request of any party is a sufficient consideration for a promise, and in the *Lipschultz case* it is said by the Court: "It is well settled that a contract may be discharged by an express agreement that it shall no longer bind either party. This is usually and correctly termed a rescission. It is equally well settled that such an agreement to operate as a discharge must be supported by a valuable consideration, which may be either a payment in money, something of value, or by a release of mutual obligations arising out of the contract. In *Brown v. Lumber Co.,* 117 N. C., 287, it is said: 'When the contract is wholly executory, a mere agreement between the parties that it shall no longer bind them is valid, for the discharge of each by the other from his liabilities under the contract is a sufficient consideration for the promise of the other to forego his rights. . . . If a contract has been executed on one side, an agreement that it shall no longer be binding, without more, is void for want of a consideration. Clark on Contracts, 418. Of the several methods by which a contract may be discharged, one is by substitution of a new contract, the terms of which differ from the original. In such cases release of the obligations of the old and the substitution of new obligations constitute valuable considerations.' 'It is also now well settled that ordinarily a written contract, before breach, may be varied by a subsequent oral agreement, made on a sufficient consideration, as to the terms of it which are to be observed in the future. Such a subsequent oral agreement may enlarge the time of performance, or may vary other terms of the contract, or may waive and discharge it altogether.' *Hastings v. Lovejoy,* 140 Mass., 261. In *McCreery v. Levy,* 119 N. Y., *Andrews, J.,* says: 'The agreement annulling the prior contracts is supported by an adequate consideration. The new obligation which G. assumed under the contract of 25 October, 1882, was alone a sufficient consideration. There was a consideration also in the mutual agreement of the parties to the prior contract which was still executory, although in the course of performance, to discharge each other from reciprocal obligations thereunder and to substitute a new and different agreement in place thereof.' "

The mutual agreement and promise of the parties to settle by the lumber tallies of the house to which the lumber was shipped, the mutual surrender of rights under the original contract, and a waiver of the right to keep accurate accounts of the timber cut and of the lumber shipped furnish a sufficient consideration under these authorities. In *Porter v. Bridgers,* 132 N. C., 93, evidence of an agreement of the same character as that introduced in this case was received and acted upon, and while the fact is not clearly stated, the agreement relied on must have been subsequent to the original contract as it was made between the plaintiff, a party to the original contract, and the defendant, who was not a party to, but an assignee of, the original contract.

The evidence of the agreement was competent for another purpose, although not supported by a valuable consideration, and that is as explanatory of the failure of the defendant to keep accurate accounts as the timber was cut, and its effect for this purpose was destroyed by the charge.

If, as his Honor charged, it was competent for the jury to consider the failure of the defendant to keep accounts of the timber cut as a circumstance against him, surely it was competent for him to say that he did not keep the accounts because it was unnecessary to do so under his agreement with the plaintiff to settle by the tallies.

For the errors pointed out a new trial is ordered.

New trial.